# EXHIBIT 9

```
1                IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
2                       EASTERN DIVISION

3    NICHOLAS MARTIN, on behalf    )
     of himself and others        ) Docket No. 10 C 3494
4    similarly situated,           )
                                   ) Chicago, Illinois
5                Plaintiff,        ) December 7, 2010
                                   ) 9:30 a.m.
6         v                        )
                                   )
7    CCH, Incorporated,            )
                                   )
8                Defendant         )
                                   )
9

10              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MARTIN C. ASHMAN
11

12   PRESENT:

13   For the Plaintiff:        ALEXANDER H. BURKE
                               Burke Law Offices, LLC
14                             155 North Michigan Avenue
                               Suite 9020
15                             Chicago, Illinois  60601

16   For the Defendant:        SUSAN E. GROH
                               77 West Wacker Drive
17                             Suite 4100
                               Chicago, Illinois  60601
18

19
     (TRANSCRIBED FROM DIGITAL RECORDING.)
20

21
     Court Reporter:           Lois A. LaCorte
22                             219 South Dearborn  Room 1918
                               Chicago, Illinois 60604
23                             (312) 435-5558

24

25
```

1     THE CLERK:  10 C 3494, Martin v CCH.

2     MR. BURKE:  Good morning, Judge, Alexander Burke for the

3  plaintiff.

4     MS. GROH:  Good morning, your Honor, Susan Groh on

5  behalf of the defendant CCH.

6     THE COURT:  Good morning.  All right, we have

7  plaintiff's motion to compel.

8     MR. BURKE:  That's right, Judge.  We issued discovery

9  about a month ago and I have gotten almost nothing.  We tried

10  to work through this with counsel, several long telephone

11  conversations, long e-mails, still have nothing, so we moved

12  to compel.  There are five categories of requests that --

13     THE COURT:  Let's take them one by one.

14     MR. BURKE:  I would like to start with Section C, which

15  has to do with the dialer and the prerecorded messages and the

16  procedures that the defendant has to make the auto dialed and

17  prerecorded calls.

18     Probably the most fundamental request -- this is on page

19  10 of 15 of our motion -- probably the most fundamental

20  request is interrogatory 5, which asks the defendant to

21  explain their policies, practices, and procedures regarding

22  the use of predictive dialers and prerecorded messages going

23  back to when they began using such.  The defendant provided no

24  substantive response to this interrogatory.

25     MS. GROH:  Judge, if I may, plaintiff served extensive

1    discovery requests on the defendant before we even filed our

2    answer in this case.  As a result, plaintiff's discovery is

3    overbroad, unduly burdensome, and irrelevant.  To a large

4    extent --

5         THE COURT:   Would you speak a little louder.

6         MS. GROH:   Sure.

7         THE COURT:   And speak into the mike.

8         MS. GROH:   Sure.

9         THE COURT:   Thank you.

10        MS. GROH:   As I was saying, Judge, plaintiffs served

11   extensive discovery requests on defendant before we even had a

12   chance to answer the complaint.  As a result, most of this

13   discovery is extremely broad and irrelevant.

14        Plaintiff requested a Rule 37 conference, which we spent

15   several hours on the phone discussing various issues.  In

16   those conversations we provided plaintiff with detailed

17   information about how our calling campaigns work and took him

18   through the steps of that.  As a result of these

19   conversations, plaintiff has served us with a second set of

20   discovery which are much more narrowed and focused than his

21   first set of discovery.

22        THE COURT:   Is it on the same subject?

23        MS. GROH:   Largely, yes, your Honor.

24        MR. BURKE:   Some of it is on the same subject, but I

25   think it's two interrogatories and three document requests or

1   something.  I mean, I think --

2       THE COURT:  Do you have another discovery request that

3   is on this subject?

4       MS. GROH:  Yes, your Honor.

5       THE COURT:  I'm asking him.

6       MR. BURKE:  I think that it touches on some of the

7   subjects that are requested in interrogatory 5, but I don't

8   think that it nullifies interrogatory 5.  I mean, I think this

9   is --

10      THE COURT:  How many times do you want them to answer it

11  though?

12      MR. BURKE:  If I get a full response to 5, I'll withdraw

13  the second set of discovery.

14      THE COURT:  Well, but what she is saying is if you come

15  up with the second set, the answer to the second set will

16  suffice for this.

17      What does your second set of interrogatories, what does

18  it ask about this subject?

19      MR. BURKE:  I don't have it with me, Judge.

20      THE COURT:  Well, do you have it with you?

21      MS. GROH:  I do have it with me, your Honor.

22      THE COURT:  All right.  Let's hear what it says.

23      MS. GROH:  As an example, as plaintiff is indicating,

24  his request relating to the dialer, he asks for every single

25  document that relates in any way to our telephone equipment.

1    In our conversations --

2        THE COURT:   This one says for you to identify and

3    explain the written and unwritten policies, practices, et

4    cetera.

5        MS. GROH:   Sure, and in our conversations pursuant to

6    Rule 37 plaintiff clarified that he was looking for the dialer

7    manuals.   In his second set of requests he specifically

8    requests the dialer manuals, which we are happy to produce

9    when they are due on December 20th, which is two weeks from

10   today.

11       THE COURT:   Do you agree that that's what you wanted

12   here?

13       MR. BURKE:   I mean, Judge, I issued that second set of

14   discovery to appease the defendant.   I mean, we had a long

15   discussion about whether document request 19 that's on the

16   same page as interrogatory 5 sufficiently asks for telephone

17   manuals.   It asks for all manuals, communications and other

18   documents related to telephony, hardware, software and other

19   telephone equipment.   I mean, these requests are reasonable.

20   I'm asking him -- because these are the most basic requests.

21       THE COURT:   This is the point that's being made.   The

22   point that's being made is you have got a more restrictive

23   apparently interrogatory or document request on the same

24   subject and that, as a result of your conference, that was

25   something you agreed to that that's what you wanted.   So why

1  do you want this?

2     MR. BURKE:  No, Judge, I didn't agree that the second set

3  of discovery was going to supersede the first set of

4  discovery.  I mean, when I issued those requests I was still

5  seeking responses to these requests for which I have no

6  responses.

7     I'm willing at this point to withdraw the second set of

8  discovery and seek full responses to this discovery.

9     MS. GROH:   Judge, I would suggest that we wait two weeks

10 and let us respond to the second set of discovery and if

11 plaintiff still has some issue with our responses, then he can

12 renotice this motion, but at this time I believe it's

13 premature to address these issues when our discovery isn't due

14 for two weeks.

15    MR. BURKE:  This discovery has been due for three months.

16 And I have been working for three months --

17    THE COURT:   He has just withdrawn his second set, so

18 your argument with regard to the second -- the second set no

19 longer exists.  It is withdrawn as of record.

20    All right.  Now, why can't you answer Interrogatory

21 No. 5?

22    MS. GROH:   Interrogatory No. 5 is overly broad and

23 unduly burdensome, and that's the basis of our --

24    THE COURT:   Explain the written policies in document

25 request No. 5, come up with all the documents, why can't you

1    do that?

2        MS. GROH:    As we objected, your Honor, this request is

3    asking for every single document.  It's not tailored at all in

4    any way to the circumstances of this case.  As we have

5    identified to the plaintiff, we don't have any class

6    information so his claim is based on one phone call that was

7    made to the plaintiff.  Based on that, this is completely

8    overbroad.

9        THE COURT:    Well, this is a putative class action, isn't

10   it?  It's a class action or an attempt at a class action.  So

11   you're saying this is not relevant?  What is your answer?

12       MS. GROH:    Our answer is that it's overbroad.  He is

13   asking for every single policy --

14       THE COURT:    I don't think it's overbroad at all.  The

15   motion to compel interrogatory No. 5 and document request No.

16   5 is granted.  Okay, next.

17       MR. BURKE:    Let's see, document request 3, a copy of the

18   recordings that the defendant used with its dialer to make

19   these unsolicited telephone calls.

20       MS. GROH:    I'm sorry, what number was that?

21       MR. BURKE:    Document request 3.  Just by matter of

22   background, your Honor, the TCPA portion of this case has to

23   do with prerecorded telephone solicitations to purchase or to

24   sell tax software.

25       THE COURT:    Yes, I read the complaint.

1       MR. BURKE:  Okay.

2       MS. GROH:  Our response to document request No. 3 in our

3 Rule 37 conference with plaintiff is that we have no recording

4 of this phone call.

5       THE COURT:  Well, did you answer to that effect?

6       MS. GROH:  We indicated to plaintiff that we would

7 supplement our answer to that effect.

8       MR. BURKE:  Judge, I suspect that we have a little bit --

9 and maybe I'm wrong, but a little bit of sharpshooting going

10 on here.  What counsel just said is they have no recording of

11 the telephone call to plaintiff, but what we're asking for

12 here is a copy of the recordings that they used with their

13 dialer during the class period.

14       MS. GROH:  To the plaintiff's phone number.

15       MR. BURKE:  Or any other person in the class.

16       THE COURT:  It says and for the call to any person

17 responsive to interrogatory No. 3.

18       MR. BURKE:  Which is the class list for the

19 interrogatory.

20       THE COURT:  So that's a recording more than just to the

21 plaintiff's telephone number.

22       MS. GROH:  We indicated to plaintiff that we would agree

23 to supplement this.

24       THE COURT:  So you agree that you will provide this?

25       MS. GROH:  My understanding is that we have no data on

1    this, so we would supplement our response to state that.

2         THE COURT:   Then what do you mean you're going to

3    supplement?

4         MS. GROH:   We would supplement our response to the

5    interrogatory -- to the request to produce to state that there

6    is no copy of any recordings responsive to this request.

7         THE COURT:   Well, if there is no -- it's hard to believe

8    that there is no copy.  So I think what you need to do is also

9    provide, have somebody from the company provide what search

10   they made, what happened to any recordings, when it happened.

11   You have got to get into the detail of the search and the

12   detail of whatever happened to these recordings or this

13   recording.

14        MR. BURKE:   I suspect that where they're coming from is

15   they're going to say "Well, we don't know which recording we

16   used with which class member."  And I think that the document

17   request -- or maybe they just destroyed the recording, I'm not

18   sure.

19        THE COURT:   I don't know, and there is no point in your

20   speculating or the court speculating.  I want a detailed

21   response as to what happened to any recordings, when it

22   happened, under whose authority it happened, what the search

23   consisted of, and any other detail with regard to why these

24   recordings -- why you don't have these recordings at this

25   time.

1      MS. GROH:  Sure, Judge.

2      THE COURT:  Next.

3      MR. BURKE:  Judge, skipping over 13 because I think that

4 it's included in document request 15.

5      THE COURT:  Okay.

6      MR. BURKE:  All documents, contracts, e-mails, or

7 agreements concerning use of your predictive dialer for

8 recorded messages.

9      THE COURT:  E-mails or agreements.  I don't even

10 understand what you mean there.  What agreements are you

11 referring to?

12      MR. BURKE:  Well --

13      THE COURT:  You buy an autodialer and it dials.

14      MR. BURKE:  Well, when we filed the case I wasn't sure if

15 they did the dialing in-house or out of house, so we have

16 learned at least through counsel's representation to Judge

17 Dow, not through these discovery responses, that the defendant

18 has an in-house dialer.  So you know, if there are

19 communications with -- pardon me, contracts, maybe there is a

20 contract for purchase of the dialer or maintenance of the

21 dialer.  Perhaps if there is a third-party that's --

22      THE COURT:  What's the relevance of that?

23      MR. BURKE:  Well, say, for example, they have a

24 third-party vendor maintain the dialer and that third-party

25 vendor has access to or has downloaded data regarding which

1    calls it made to whom at what time, the very data that the

2    defendant says does not exist, that would be -- the identity

3    of that third-party would be revealed in the response to

4    document request 15.

5         Similarly, I suspect, although counsel says it's not

6    true, that when sales associates wanted to do a dialer

7    campaign, they e-mailed somebody saying "Hey, I want to do

8    this dialer campaign, you know, please, have the dialer call

9    this set of people from the database," that information would

10   be probably in an e-mail or a memo.

11        Defendant tells me that the sales agents walked over to

12   this guy Brian Holbrook at the office in Atlanta and verbally

13   asked for a dialer campaign to be done and the dialer campaign

14   was done without any, any documentation at all.

15        MS. GROH:    To that, Judge, as we told plaintiff in our

16   Rule 37 conference, mostly what was done was, you know, in

17   sales everything has to be prompt and fast.  It was mostly

18   face-to-face contact.  There may have been some e-mails that

19   were sent.  However, the information that was contained in the

20   e-mails was contained in scripts that were run against the

21   database, which we have, we have copies of the script and

22   we're happy to provide that to plaintiff's counsel.  They're

23   more inclusive and more responsive than the e-mails

24   themselves, so we feel that those would be irrelevant.

25        THE COURT:    I think document request 15 is not too broad

1    and I think it ought to be answered.  It certainly is relevant

2    as to what was told to who with regard to doing these dialings

3    and, of course, what the script was.  So all documents -- I'm

4    not so sure that the purchase of a dialing system, I don't

5    think you need to provide any contract with regard to that,

6    but any other use of the dialing system, documents, contracts,

7    e-mails or agreements, that certainly is relevant and not very

8    broad at all.  So the motion to compel document request 15 is

9    granted.  What's next?

10         MR. BURKE:  Skipping down to 19, please.

11         THE COURT:   Okay.

12         MR. BURKE:  Manuals, communications, other documents

13   relating to the telephony hardware, software and other

14   telephone equipment.  What I understand --

15         THE COURT:   Is that a -- telephony, is that on purpose?

16         MR. BURKE:  Yes, I think that's a word.

17         THE COURT:   Is it really a word?

18         MR. BURKE:  Telephony.

19         THE COURT:   Telephony.

20         MR. BURKE:  Yes.

21         THE COURT:   I'll go look it up.

22         MR. BURKE:  What we are looking for here, Judge, is --

23   well, based on Rule 37 talks we understand that there is some

24   database from which the telephone numbers that the dialer

25   called is taken.  We understand that there is a dialer and

1  that there is some process by which the -- that the sales

2  agents asked Brian Holbrook to make these calls.  Of course,we

3  don't have the full responses to interrogatory 5 so I don't

4  have anything sworn that says that this is what happens, but

5  this is what has been explained to me.

6      In order to hire an expert, which I think I'm going to

7  have to do in this case to help me sort through this, through

8  this E discovery, I need to know what type of telephones they

9  have, what kind of dialer they have, what kind of database

10  this is that operates with the dialer to make these calls, and

11  how these things interact.  So that's the primary basis for

12  the document request.

13      MS. GROH:  If I may respond to that, your Honor, just,

14  as plaintiffs describe in detail, that's the type of discovery

15  request that we could respond to, but in this discovery

16  request where he is asking for all manuals, communications and

17  other documents related to all of our telephone software and

18  hardware, he is not limiting it to the dialer in issue.  It's

19  all --

20      THE COURT:  The motion to compel is granted with regard

21  to the automatic dialing system rather than all telephones.

22      MR. BURKE:  So the telephone --

23      THE COURT:  It excludes regular telephone calls.

24      MR. BURKE:  Okay, we will work with that.  I think that

25  there may be overlap, so there --

1    THE COURT:   Well, yes, certainly there may be overlap,

2    but you're not entitled to all of their information regarding

3    their regular telephone system.

4    MR. BURKE:   I don't care about that stuff.

5    THE COURT:   Just the auto dialling.  So the motion to

6    compel is granted to that limited extent only.  Next.

7    MR. BURKE:   Going back to section 8 please, page 6.

8    THE COURT:   Yes.

9    MR. BURKE:   These materials have to do with the class

10   list and documents and data concerning the class members.

11   THE COURT:   Are you talking about interrogatory 3 or

12   what?

13   MR. BURKE:   Interrogatory 3 -- beginning with

14   interrogatory 3, your Honor.

15   THE COURT:   All right.  I'll read it.

16   (Pause)

17   THE COURT:   Counsel, why don't you respond.

18   MS. GROH:   As we have indicated to plaintiff's

19   counsel --

20   THE COURT:   Pardon?

21   MS. GROH:   As we have indicated to plaintiff's counsel

22   in our Rule 37 conversations, we do not have any responsive

23   class data.

24   THE COURT:   You don't have the intended recipient, you

25   don't have communications attempted and completed, from the

1  recipients of these auto dialers?

2      MS. GROH:   No, your Honor, there is no business reason

3  for us to keep that data.  So they didn't keep it.  So we have

4  no records of phone calls made within this class period.

5      THE COURT:   How about the people who responded?  Didn't

6  somebody respond and buy your client's material?

7      MS. GROH:   I can't say.

8      THE COURT:   They were auto dialed and they responded.

9  You can't tell me you don't know them.

10     MS. GROH:   The records that we have don't, don't

11  indicate that one way or the other.  We don't have any records

12  to show the calls that were made.

13     MR. BURKE:   Furthermore, I suspect that they have a Do

14  Not Call list subject to the federal Do Not Call regulations.

15  Most states have similar Do Not Call regulations.

16     THE COURT:   But you're asking here for the intended

17  recipient and the communications to and from the person and

18  where they got the personal information, including the e-mail

19  and telephone number for these people.

20     MR. BURKE:  Yes.

21     THE COURT:   You don't have any documents with regard to

22  that?

23     MS. GROH:   I'm telling you that we can't, we can't

24  identify what phone calls were made from the dialer and we

25  have indicated this to plaintiff's counsel and we are willing

1  to supplement --

2      THE COURT:   So you could be dialing these people over

3  and over and over again, right, since you don't know who you

4  dialed in the first place or the second place.

5      MS. GROH:   That very well could be because that's not

6  information that we retain.

7      THE COURT:   That's very difficult to believe.  I want a

8  detailed exposition of how this works and why you do not have

9  the intended recipient of auto dialing.  You didn't dial

10 everybody in these states, did you?  It was limited in some

11 fashion.  Where did you get that limitation from?  You didn't

12 dial everybody, did you?

13     MS. GROH:   No, we had a database that had prospective

14 customers, existing customers.

15     THE COURT:   So you do have a list of prospective

16 customers.  That's the source.

17     MS. GROH:   But we do not have information of who on that

18 list were called.

19     MR. BURKE:   But they do have these database queries.

20     MS. GROH:   Yes, we have the database queries and we have

21 a database but even if you cross reference them it won't

22 indicate whether a phone call was made to that person.

23     THE COURT:   So once again, I say so that means you could

24 dial the same person twice or three times or ten times.

25     MS. GROH:   That very well could be.

1    THE COURT:   All right.  I want the database and I want

2   you to, and to produce the database and a detailed exposition

3   of how this works.

4    MR. BURKE:  I suspect that there are backup tapes or

5   something about the database that might help us recreate what

6   it looked like when these calls were queried.

7    MS. GROH:   We have run this down from two different

8   angles, your Honor.  We have looked at what was preserved and

9   then we have looked at what can be recreated, and as I have

10  said before, what was preserved is nothing, there is no

11  business reason for them to keep this data.

12    THE COURT:   Well, you mean there was some of this

13  information and it wasn't preserved?

14    MS. GROH:   There were calls that were made to --

15    THE COURT:   There were calls that were made and the

16  second after the call was made you didn't know to whom it was

17  made?

18    MS. GROH:   The way the dialer worked is it was

19  refreshed.  If it was refreshed, then the numbers that were

20  loaded in the dialer were deleted, all the records were

21  deleted, or if it was not refreshed, after 30 days it just

22  overwrote over itself.

23    So there is -- there is no compelling business reason for

24  us to preserve any of the data from the dialer.  What we have

25  done is, you know, try to figure out what was preserved, what

1  could be on the tapes, which is nothing, and then we have

2  tried to recreate what numbers were called based on what we

3  have.  There are a number of deficiencies with that process,

4  though, and like I said before, you can run the scripts

5  against the current database that we have.  However, we don't

6  have a historic database to indicate what calls -- what was in

7  the database at the time that these calls were made within the

8  class period.

9      And although we have the scripts, if you cross reference

10 the scripts against our current database, that still doesn't

11 show whether or not a call was made, it just shows that a list

12 was made based on that information.

13     THE COURT:  Well, take us through the list, the list

14 from which everything was made and the entire process --

15     MS. GROH:  We would be happy to do that --

16     THE COURT:  -- because it's difficult to believe that a

17 company would not keep track of who they called.  It's very

18 difficult to believe.

19     MS. GROH:  I understand that, but as -- the way this

20 business worked is they kept track of their customers, their

21 existing customers was very important to them, but prospective

22 customers were not as significant for them to keep track of.

23 So that wasn't something --

24     THE COURT:  But you would think that a company would

25 then eliminate them so that they wouldn't bother -- they

1  wouldn't call them again, they wouldn't -- they wouldn't have

2  any expense with regard to promoting those prospects.

3     MS. GROH:  And that's something that did happen within

4  the database.  The database itself was constantly changing.

5  People were kicked out, people were added in, depending on --

6     THE COURT:  But the next day suppose you told the

7  database or you told the machine do 10,000 others.  Did the

8  machine know who it did the day before?

9     MS. GROH:  My understanding is no, your Honor, but if a

10  sales person had reached out to an individual who said "Please

11  don't call meany more," it would have kicked that person out

12  of the database.  So that individual might not be in the

13  database anymore is my understanding of how it worked.  We are

14  happy to detail this in our supplemental response to this

15  interrogatory.

16     THE COURT:  Well, all right.  Make a very detailed

17  response as to how it works and we will take it from there.

18  Next.

19     MR. BURKE:  I suspect that the discussion that we just

20  had would be the same as to document request 37 and document

21  request 12, both on Page 6.  Again, we are trying to figure

22  out who they called.

23     THE COURT:  Let me ask you, the automatic dialer, does

24  the telephone company provide these for nothing?  Do you get

25  billed by a telephone company?

1      MS. GROH:  It's a phone record, so we --

2      THE COURT:  So you get billed.  So the telephone company

3 has copies of who you called, do they not?

4      MS. GROH:  We have run down that angle as well, your

5 Honor.  The way it worked is we had an internal switch on our,

6 at our company so that outbound calls all came from the same

7 number, the same three numbers, and there is no way to tell if

8 the call was made from the dialer or if the call was made from

9 a salesperson's desk.

10     THE COURT:  Well, then let's include all the calls.

11 Let's include all the calls.

12     MS. GROH:  But the fact that --

13     THE COURT:  I would suspect that the regular telephone

14 calls made by people are way less than the automatic dialing,

15 right?  They would have to be.

16     MS. GROH:  I don't know if we can say that for certain,

17 Judge, but there is no way for us to tell which calls were

18 made from, you know, a salesperson to his wife or made from --

19     THE COURT:  Well, maybe there is no way to tell at the

20 beginning, but maybe some further investigation will be able

21 to figure that out.  All the telephone calls under these

22 circumstances, you provide this information on all the

23 telephone company -- all the telephone calls out of this

24 company.  And if that is too inclusive, then such is life.

25 But it would include everyone who was called.

1     MS. GROH:  In addition to --

2     THE COURT:  Well, that's what these interrogatories are

3 looking for is who was called, and who was called is in that

4 list.

5     MS. GROH:  Well, it should be narrowed to who was called

6 from the dialer.

7     THE COURT:  Well, that would be nice, but you're saying

8 you can't do that.  Then give us the entire list and let him

9 worry about who was called and who wasn't called.  So the

10 motion with regard to document request 12 is granted.

11     Okay, next.

12     MR. BURKE:  Page 7, Judge, affirmative defenses.  I would

13 like to skip to 11 because I think 4 is subsumed in 11, which

14 is an interrogatory that asks for the facts and law that

15 supports their affirmative defenses.

16     THE COURT:  Counsel.

17     MS. GROH:  In our Rule 37 conferences with the plaintiff

18 we told him that our main affirmative defense or defense at

19 this time is that we got these phone numbers, we got the

20 plaintiff's phone number from the IRS.

21     THE COURT:  How do you get the phone numbers from the

22 IRS?  I saw that in these papers.  I'm interested.  How do you

23 get telephone numbers from the IRS?

24     MS. GROH:  It was pursuant to a FOIA request.

25     THE COURT:  Pardon?

1      MS. GROH:   It was pursuant to a FOIA request to the IRS.

2      THE COURT:   You mean you can get telephone numbers from

3  the IRS, telephone numbers of taxpayers so you can call them

4  from the IRS?

5      MS. GROH:   Correct, your Honor.  Our business is selling

6  tax software to businesses.

7      THE COURT:   Yes.

8      MS. GROH:   We got a list of businesses that filed a

9  certain number of tax returns on behalf of individuals.  So

10  our marketing was towards businesses.

11      THE COURT:   And you get that from the IRS.  Does that

12  mean that these people consented?

13      MS. GROH:   Our argument is that these are businesses and

14  not individuals.

15      THE COURT:   And businesses have consented that their

16  income tax return information, some information from the

17  income tax return can be disseminated by the Internal Revenue

18  Service?

19      MS. GROH:   Our position is that businesses are not

20  covered by the TCPA or the Do Not Call list, that by holding

21  out a phone number as your business, you're consenting for the

22  world to call you in that capacity.

23      THE COURT:   Maybe they're not covered by the Do Not Call

24  list.  What I'm talking about is if you're running a law firm,

25  that's a business, okay?  You file an income tax return.  Are

1  you consenting that your telephone number can be provided to

2  John Fisher here by filing an income tax return?

3      MS. GROH:   I think the issue that we are arguing is a

4  little different than that, but that would be subject to the

5  FOIA document request, which is something that is exactly what

6  can be done.

7      THE COURT:   I'm trying to understand how this works so I

8  can rule fairly on these discovery requests and I still can't

9  understand, it's beyond me that the IRS would provide

10  telephone numbers of its taxpayers, whether they're corporate

11  or individual, to anybody.

12     MS. GROH:   That's exactly what happens and that's what

13  happened here.  But our defense is a little bit different.

14  It's that these are businesses that were holding themselves

15  out under these numbers and those are the numbers we called,

16  and as a result of that --

17     THE COURT:   And did they consent?

18     MS. GROH:   We believe they did consent by using these

19  numbers as their business numbers, which would not be

20  covered --

21     THE COURT:   They consented by filing the income tax

22  return which contained their telephone number?

23     MS. GROH:   Holding themselves out as a business.  We

24  believe that you can contact businesses in that capacity,

25  which would not be covered by the TCPA or the Do Not Call

1  list.

2      THE COURT:  Holding -- once again, your law firm is a

3  business.  You file an income tax return with the government.

4  Are you by so doing -- you hold yourself out as a business,

5  are you by so doing consenting that the IRS provide or

6  disclose your telephone number?

7      MS. GROH:  Well, the IRS is a separate entity.  We would

8  say --

9      THE COURT:  Yes, I know it's a separate entity.

10      MS. GROH:  -- you are consenting.

11      THE COURT:  I know it's a separate entity, but I'm

12  talking about the consent part of the taxpayer.  Have you by

13  so doing consented?

14      MS. GROH:  We would say yes, your Honor.

15      THE COURT:  All right.

16      MR. BURKE:  There are six affirmative defenses, Judge.

17  We are asking for them to explain them.

18      THE COURT:  All right.  Well, you talk about affirmative

19  defenses that haven't yet been made.  I don't think they need

20  to explain those.

21      MR. BURKE:  Well, not now.

22      THE COURT:  No.  So why can't you respond to that?

23      MS. GROH:  We indicated to plaintiff's counsel that we

24  would supplement our response to state that our defense is

25  that the plaintiff in this case --

1      THE COURT:  So you will respond to it?

2      MS. GROH:  Yes.

3      THE COURT:  So the motion to compel with regard to

4 Interrogatory No. 4 is granted in that any objections thereto

5 are being waived.  The next one.

6      MS. GROH:  If I could just clarify one point, your

7 Honor, we indicated that we would supplement to state the

8 defense I just explained, that the plaintiff consented by

9 holding out this number as its business number.  Beyond that,

10 our investigation continues and at this time we can't identify

11 every affirmative defense or every defense that we may have,

12 every argument --

13      THE COURT:  No, no, you don't have to explain any

14 affirmative defenses that you have not made.

15      MS. GROH:  Okay.  When you said, waiver, Judge, I just

16 wanted to clarify that we weren't waiving --

17      THE COURT:  Only affirmative defenses that are stated in

18 your answer, in your pleading.

19      Okay, next.  Anything else?

20      MR. BURKE:  Document request 7, documents that concern

21 any person whose cell phone was called using the dialer, could

22 be persons who were within the class as defined.

23      MS. GROH:  And again, your Honor, we don't have any

24 class information, and as far as the --

25      THE COURT:  Just a moment, just a moment.  Before you

1  respond, let me read it.

2       (Pause)

3       THE COURT:  Okay, your response is?

4       MS. GROH:  As we stated before, we have no information

5  about the class, what phone calls were made to these class

6  members.  As far as the prior express consent, it's the same

7  defense that we stated before.

8       THE COURT:   In other words, what you're saying is you

9  have no express consent from anybody, right?

10      MS. GROH:  We are saying that we don't know who was

11 called so there is no way for us to say --

12      THE COURT:  Go through your files of all your customers

13 and tell us who made an express consent, "express" meaning

14 they consented to you, they sent you a letter saying "It's

15 okay for you to call me."

16      MS. GROH:  And as I have explained before, we don't have

17 any class data.  We can't indicate what calls were made to

18 individuals and there is no way for us to track that down.

19      THE COURT:  You can indicate as to those people who you

20 had contact with who responded to the autodialer.

21      MS. GROH:  And we don't have a record of that

22 information.  But we do have the same --

23      THE COURT:  Now, wait a minute, wait.  You also don't

24 have a record -- the autodialer calls John Jones Company.

25 John Jones Company calls you and says "I'm interested in what

1  the autodialer said." There is no follow-up, there is no

2  record?

3      MS. GROH: There is no way for us to track that down.

4      THE COURT: Why not? Can't you look in a file? A file

5  was created when somebody called and affirmatively responded

6  to the promotion. You can't tell me you have no records of

7  that. That's how you make your living.

8      MS. GROH: If someone called us in response to a

9  promotion, then there was no auto dial call. Maybe I'm not

10  following you, Judge.

11      THE COURT: If somebody called you and said "I was

12  called by your company, I'm interested," you have a record of

13  that, don't you?

14      MS. GROH: If that prospective customer became a

15  customer, then that entry would be in our --

16      THE COURT: Either became a customer or had

17  conversations regarding getting to be a customer.

18      MS. GROH: As far as tracking how that occurred --

19      THE COURT: No, that isn't what this asks. What this

20  asks is any documents with any of these people that showed

21  express consent to call them. I think that's what it asks

22  for, right?

23      MR. BURKE: Yes.

24      THE COURT: What you're saying is you have no such

25  documents?

1    MS. GROH:    Correct.

2    THE COURT:    Okay.  Well, why don't you answer that way.

3  If that's the truth, then answer that way.

4    MS. GROH:    And we have indicated to plaintiff that we

5  would supplement these responses accordingly.

6    MR. BURKE:    No documents supporting the affirmative

7  defenses, fine with us.

8    THE COURT:    Okay, what else?

9    MR. BURKE:    Page 11, Judge, information concerning the

10  plaintiff.  The defendant has refused to provide us with

11  information that it has regarding the plaintiff.  We have

12  asked for that stuff.  They're saying we don't get it.

13    MS. GROH:    We identified one document that we have that

14  has the plaintiff's name, his address, his phone number, the

15  name of his business.  Before we produce this to the

16  plaintiff, we would like to have it covered by the protective

17  order.

18    THE COURT:    What protective order?

19    MS. GROH:    We have been working on getting a protective

20  order entered in this case.

21    THE COURT:    What do you need a protective order for

22  plaintiff's information?  Plaintiff waives that, doesn't

23  plaintiff?

24    MR. BURKE:    As long as they don't put it in the public

25  record for discovery purposes, absolutely.

1    MS. GROH:   Out of an excess of caution, the plaintiff is

2  suing --

3    THE COURT:   Out of an excess -- it's excessive caution,

4  not an excess of caution.  You have -- if I tell you "Look,

5  this is my telephone number, you can tell John Jones my phone

6  number and you can tell John Jones everything you know about

7  me," you need a protective order after that if the party says

8  do it?

9    MS. GROH:   In this case the plaintiff is suing us for

10  violation of his privacy.  Out of an excess of caution it

11  would be our preference to designate that document as

12  confidential.

13    THE COURT:   The motion to compel on that is granted.

14  You give them all information that you have.  You can work out

15  protective orders generally, but with regard to plaintiff's

16  information that plaintiff is requesting, that's a ridiculous

17  position.  It is ridiculous.  The plaintiff wants you to tell

18  the plaintiff what information you have on the plaintiff.

19    MS. GROH:   Okay.

20    THE COURT:   And you have an excess of caution --

21  baloney.  Next.

22    MR. BURKE:   Page 12, Judge, materials bearing on

23  willfulness.  Treble damages are available if we can prove

24  that the violation is willful.  These requests are designed to

25  show that the defendant knew about the TCPA and made these

1    calls anyway.

2         THE COURT:   Complaints, written complaints, lawsuits.

3         MS. GROH:   We object to this, your Honor.

4         THE COURT:   Pardon?

5         MS. GROH:   We object to this.  Any complaint that was

6    filed against defendant does not have any bearing on this

7    case, it would never be admissible in court.  And it's -- it's

8    just plainly irrelevant and overbroad.

9         THE COURT:   I disagree.  If the complaints are the same

10   or similar, that somebody was called without their permission,

11   that shows knowledge, that shows intent, that shows or may

12   show -- all of these things may tend to show willfulness.

13   Willfulness has something to do with punitive damages.

14        MS. GROH:   Your Honor, if I may, the, just the fact that

15   a plaintiff lodged an allegation against the defendant would

16   not bear on willfulness --

17        THE COURT:   Oh, no, it's not --

18        MS. GROH:   That case could be dismissed, that case could

19   have been subject to Rule 11 sanctions.

20        THE COURT:   That's very true, that's very true, but we

21   are not talking about admissibility into evidence right now,

22   we are talking about discovery.  How is he to know what may be

23   admissible and what may not be admissible unless he has the

24   information?

25        MS. GROH:   I would again say that this is overbroad and

1   perhaps a judgment that was entered against the defendant in a

2   circumstance similar to this could be relevant to willfulness,

3   but as far as every allegation --

4        THE COURT:   Suppose you settled 10,000 of these

5   complaints individually.  You mean to say -- so there is no

6   judgment.  Isn't that potentially relevant?

7        MS. GROH:   We would say no, your Honor.

8        THE COURT:   I disagree with you.  I think it's

9   potentially relevant, the multiplicity -- I don't know if it

10  is and I'm not ruling that it is, don't get me wrong.  I'm not

11  ruling that it's admissible.  What I am ruling is first you

12  have to get the facts.  Once you get the facts, you will know

13  whether something is admissible or not.  It may lead to

14  admissible evidence and that's the standard.  Therefore, the

15  motion to compel with regard to that is granted.

16       MR. BURKE:   So that would be, Judge, request 23, 24, 25

17  is similar, your Honor, it asks for documents from any source

18  concerning the legality or propriety of making dialer calls.

19       THE COURT:   I would say all documents from any source

20  other than the defendant's own lawyers.

21       MR. BURKE:   They have already told us that there are no

22  such documents.

23       THE COURT:   Pardon?

24       MR. BURKE:   They have told us that there are no such

25  documents, no documents subject to privilege.

1    THE COURT:   All right.   So -- no such documents subject

2  to privilege.

3    MR. BURKE:   That's right, they put that in their papers

4  that there are no privileged documents.

5    THE COURT:   Motion to compel request No. 5 is granted.

6    MR. BURKE:   25, your Honor?

7    THE COURT:   Yes.

8    MR. BURKE:   Okay.   Documents that discuss defendant's

9  compliance or lack of compliance with the TCPA.

10    MS. GROH:   Again, your Honor, we will argue that this

11  does not bear on willfulness.   Perhaps if this was an FDCPA

12  case and there was a bona fide error defense, it could be

13  relevant, but as far as this case goes, the compliance or lack

14  of compliance with the policies and procedures in this regard

15  are not relevant and this motion should be denied.

16    MR. BURKE:   It's the same thing as with the complaints.

17  I mean, if you have got a hundred e-mails that were sent a

18  month before the autodialer called the plaintiff, it shows

19  that the defendant knew that they were taking a chance.

20    THE COURT:   I agree.   Document request 26 is granted for

21  the same reason.   Next.

22    MR. BURKE:   31.

23    THE COURT:   That's the same thing.

24    MR. BURKE:   Same thing.   32 is similar as well.

25    THE COURT:   Granted, granted.   And No. 32 --

1          MS. GROH:    Your Honor, if I could clarify --

2          MR. BURKE:    32 we withdraw.    That has to do with the

3    e-mail claim and there is a stay of discovery having to do

4    with the e-mail claim.

5          THE COURT:    All right.

6          MR. BURKE:    35.    35 is a little bit different than 31 in

7    that it has to do with revocation of consent.    For example,

8    somebody has called in to defendant and said "Hey, don't call

9    me," I think that would probably be subsumed in 31 and 26, but

10   this one is a little bit more explicit.

11         THE COURT:    Well, you do, maintain a Do Not Call list,

12   right?

13         MS. GROH:    Currently we do, your Honor, and I don't know

14   the time frame on that, but again, within the class period we

15   don't have any data that would be responsive to this.

16         THE COURT:    Well, you have documents -- you have some

17   documents which list Do Not Call.    You must have some sort of

18   a procedure as to what happens when somebody says "Don't call

19   me," right?

20         MS. GROH:    I'm not sure if it's a written procedure or

21   if it's a --

22         THE COURT:    Well, you're not sure, answer it.    You don't

23   have to create any documents, all you have to do is answer it.

24   And come up with the documents that you have.    Request No. 35

25   is granted.

1      MR. BURKE:  39, your Honor, another arm of what CCH does

2   is they publish legal treatises for compliance with marketing

3   and advertising laws.

4      THE COURT:  I know about CCH.  I used to use them.  They

5   were pretty tough to use when I was in law school.  Maybe

6   they're a lot better now.

7      MR. BURKE:  They're organized by date rather than by

8   subject.  Your Honor, we are asking for anything -- and I

9   think this is included in 25, maybe some of the other

10  requests, but expressly we are asking for their legal

11  treatises and updates that have to do with TCPA compliance.

12     MS. GROH:  And, your Honor, I see no relevance in this

13  whatsoever.

14     THE COURT:  I don't think it's relevant either.  If you

15  want to, look them up.  They're published, aren't they?

16     MS. GROH:  Correct.

17     THE COURT:  These are treatises.  They're published, you

18  can look them up.

19     MR. BURKE:  I haven't been able to find one, your Honor.

20     THE COURT:  Well, so maybe --

21     MR. BURKE:  On eBay, not in the library, not anywhere

22  else.

23     THE COURT:  Well --

24     MR. BURKE:  And we are asking to show knowledge of

25  these -- of the TCPA.

1    THE COURT:   I don't think it's relevant however.

2    MR. BURKE:  Okay.

3    THE COURT:   Their exposition of the law, I don't think

4    that's relevant.

5    MR. BURKE:  Organizational charts of the defendant.

6    THE COURT:   What else -- where are you at?

7    MR. BURKE:  Sorry, Judge.  We are almost done.  Page 14.

8    THE COURT:   Organization charts.

9    MR. BURKE:  Both of personnel and the corporate structure

10   of the defendant.

11   THE COURT:   What's the relevance?

12   MR. BURKE:  Well, as to personnel I want to know where

13   Brian Holbrook, this autodialer guy, where he falls, who his

14   boss is, who works underneath him.

15   THE COURT:   Why don't you ask that specifically.  You

16   want an entire organizational chart for a company that's been

17   in existence a long time and is a large company.  You don't

18   need to know all that, do you?  If you want something specific

19   about specific people that are involved with the autodialer,

20   okay, but --

21   MR. BURKE:  I don't think -- I suspect they're not going

22   to have a chart that just deals with Brian Holbrook, but any

23   chart that includes Brian Holbrook I think would be

24   appropriate.

25   MS. GROH:   Judge, I would agree with you that this is

1   plainly irrelevant and overbroad, and as you stated, this is a

2   large company with a lot of players and personnel --

3        THE COURT:   If you want anything specific, you can ask

4   something specific, but I think this is overly broad and is

5   irrelevant and therefore, that motion is denied.

6        MR. BURKE:   Judge, we don't have an insurance policy from

7   the defendant.

8        MS. GROH:   On this point, your Honor, we were seeking to

9   enter a protective order before disclosing this proprietary

10  business contract with a third-party.

11       THE COURT:   Can I ask you what's proprietary about an

12  insurance policy?

13       MS. GROH:   It's a private contract that is commercial

14  information under Rule 26(c).

15       THE COURT:   It's a private contract.  You have already

16  disclosed what company.

17       MS. GROH:   Pursuant to our Rule 26 obligations, we

18  have --

19       THE COURT:   So --

20       MS. GROH:   -- identified the policy limits --

21       THE COURT:   If somebody wanted to call that company and

22  say "Look, I would like to have a liability policy that covers

23  the following," they would present that policy, wouldn't they?

24  They should be happy with that.  I don't understand what's so

25  proprietary.  Everything these days is proprietary and

1   confidential. How does it hurt you -- how does a competitor

2   gain an advantage over your liability insurance policy for

3   heaven's sake?

4      MS. GROH: It's our position, your Honor, that it's

5   commercial information that should be protected --

6      THE COURT: Why?

7      MS. GROH: -- from disclosure.

8      THE COURT: Why? What I'm trying to get at is why.

9   You're not the only one. The lawyers now, everything is

10   proprietary and everything is confidential. That isn't the

11   way it's supposed to work. It's supposed to be secrets that

12   are subject to protective orders, not any other old document

13   that doesn't hurt you competitively.

14      Anyway, you're going to work on a protective order. The

15   motion with regard to the insurance -- produce the insurance

16   policy. Also, work on your protective order.

17      MR. BURKE: Judge, two more issues remain. One is that

18   there is no privilege log, but in their papers they said that

19   they're not withholding anything based on privilege, so I

20   think that's a non-issue.

21      THE COURT: Well, so we don't have to visit it.

22      MR. BURKE: And the final issue is an interrogatory that

23   I issued asking for essentially a privilege log of documents

24   that the defendant knows are responsive to the discovery

25   requests but they don't have in their possession, custody, or

1  control.  And I have narrowed that interrogatory to dialer

2  documents.

3       THE COURT:  I don't understand that.  Documents that

4  they know exist, but they do not have any control --

5       MR. BURKE:  I'm asking where they are so I can go get

6  them.

7       THE COURT:  Well, it's not a privilege log.

8       MR. BURKE:  No, it's sort of a log of what they don't

9  have.

10      THE COURT:  It's a list.

11      MR. BURKE:  Yes, it's a list.

12      THE COURT:  A list of --

13      MS. GROH:  Interrogatory No. 7 requests defendant

14  identify all responsive documents that are being withheld on

15  the basis of privilege or an objection.  Defendant answered

16  that to say that there are none.  Somehow plaintiff is still

17  moving to compel on this request.

18      THE COURT:  There are none.

19      MR. BURKE:  Well, I mean, your Honor, for example, there

20  are manuals that were not being produced before today that the

21  defendant was withholding based upon objection of overly

22  burdensome.

23      THE COURT:  But they are going to produce them in

24  accordance with our rulings today.

25      MR. BURKE:  For sure.

1   THE COURT:   Okay.

2   MR. BURKE:   What I'm asking for here, what I wanted was

3   for them to tell me is "Oh, we have got these manuals, but

4   we're not giving them to you because we think it's unduly

5   burdensome."  If there is anything after today that they're

6   not giving me because of some objection, I would like to know

7   what it is.  And if there is something that they don't have

8   custody of --

9   THE COURT:   They have to give you everything they have.

10  If they know where something is and they do not have control

11  over it, ask them that specifically, but you didn't ask them

12  that in this interrogatory.

13  MR. BURKE:   Not specific enough.

14  THE COURT:   Therefore, the motion with regard to that

15  interrogatory is denied.

16  MR. BURKE:   Judge, as to the protective order, this is

17  our last issue.  There are two subjects that were, that the

18  parties are dealing with and I think that if we can resolve

19  them today, the defendant will probably be able to file a

20  motion for protective order.

21  One, I would like to have a sentence in Paragraph 1 that

22  says "Nothing herein shall expand or restrict the scope of

23  materials that may be designated as confidential pursuant to

24  Rule 26 and applicable case law."  The defendant finds that

25  objectionable.

1       MS. GROH:   We have three objections to that, your Honor.

2   Frankly, we wouldn't have a problem if we cut that sentence

3   off at "Nothing herein shall expand or restrict the scope of

4   materials that may be designated as confidential," period.

5   The remaining part of the sentence, however, restricts the

6   designation of confidential materials while the first part of

7   the sentence expands it.  We find that to be contradictory

8   and --

9       THE COURT:   But you still have a provision that says if

10  somebody challenges that, you can go to court and the court

11  can determine that.

12      MS. GROH:   Exactly, which is why we don't think that

13  this provision is necessary because there is a provision later

14  on on how to challenge the designation of a document.

15  Additionally, this "pursuant to Rule 26(c) and applicable case

16  law" is just a vague statement that we find to be unnecessary

17  and unclear.

18      MR. BURKE:   Earlier in the paragraph it says that the

19  defendant or any party -- first it said defendant only -- can

20  make any document that's not previously made available to the

21  public confidential in this case.

22      THE COURT:   All right.

23      MR. BURKE:   I think that's too broad.  I don't see --

24      THE COURT:   Well, then you can challenge -- there is a

25  challenge provision here, isn't there?

1      MR. BURKE:   There is.

2      THE COURT:   So challenge it when the time comes,

3  challenge it.

4      MR. BURKE:   As long as I don't get stuck with some

5  argument that says oh, the law of the case is that any

6  document that wasn't previously disclosed to the public, the

7  order already tells us that it's confidential.  That's what

8  I'm worried about.  And I think that any motion challenging

9  confidentiality, we are going to be arguing Rule 26(c) and

10 applicable case law.

11     THE COURT:   Have the words "subject to the challenge

12 provisions as shown in paragraphs" whatever they are, you can

13 add that, but make it subject to the challenge provisions.

14     MR. BURKE:   And the second issue is that I think that

15 it's appropriate, and I have had this in other protective

16 orders, to have a provision that third parties that seek to

17 use the protective order in subpoena responses subject

18 themselves to the jurisdiction of this court for any disputes

19 or anything else having to do with their subpoenaed responses.

20     THE COURT:   Well, they are anyhow.  They are anyhow.  If

21 you subpoena somebody and they don't want to come up with the

22 documents that you have subpoenaed, you come to court, you ask

23 that they be held in contempt of court.

24     MR. BURKE:   I don't want to have to --

25     THE COURT:   What do you need that for?

1    MR. BURKE:  Well, say, for example, a subpoena issues out

2 of the District of Alaska.

3    THE COURT:   Then you have got to go up to Alaska.  We're

4 not going to circumvent that and say -- first of all, it

5 doesn't bind any of the third parties anyway.  I can make all

6 kinds of orders with regard to that, they didn't agree, and

7 you're saying, well, if they look at it --

8    MR. BURKE:  No, I'm saying if they use the protective

9 order, if they designate materials protected, confidential

10 under this protective order, they're submitting to the

11 jurisdiction of this court with regard to those documents.

12    MS. GROH:   We don't think this language is necessary,

13 your Honor, and think it's overly burdensome to require a

14 third party to submit to the jurisdiction of this court.

15    THE COURT:   I agree.  It's an attempt to circumvent that

16 portion of the Rules that say, that have to do with where

17 disputes as to third-party subpoenas are resolved and I don't

18 think you can do that, and I don't think it's binding upon

19 them at all even if they use it.  Therefore, the order is

20 don't put it in.

21    MR. BURKE:  Very good.

22    THE COURT:   Okay.  You're going to submit a draft order

23 on this.

24    MR. BURKE:  Okay.

25    THE COURT:   All right.  We will circulate it and --

1   submit a draft order.

2       MR. BURKE:  I'm going to also order the transcript.

3       THE COURT:   I think you're going to need to.

4       MR. BURKE:  Okay.

5       THE COURT:   All right.

6           *                 *                 *

7           I certify that the above was transcribed

8           from digital recording to the best of my ability.

9

10              /s/ Lois A. LaCorte

11      _____        _____

12      Lois A. LaCorte                Date

13      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25